UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff,

v.

KATHLEEN ANN MATTESON,

    Defendant.
_____/

Case No. 1:23-cr-106

HON. JANE M. BECKERING

**MEMORANDUM OPINION AND ORDER REGARDING RESTITUTION**

On August 30, 2023, a grand jury returned an indictment charging Defendant with one count of bank fraud under 18 U.S.C. § 1344(1), two counts of theft, embezzlement and misapplication of funds by bank employee under 18 U.S.C § 656, and two counts of aggravated identify theft under 18 U.S.C. § 1028A (ECF No. 1). After a trial, the jury found Defendant guilty of all five counts (ECF No. 43). On August 15, 2024, the Court sentenced Defendant to 61 months of imprisonment, followed by two years of supervised release (Judgment, ECF No. 52)[1].

A remaining issue before the Court is restitution. In its sentencing memorandums filed prior to the sentencing hearing (ECF Nos. 48 and 49), the Government sought restitution in an amount greater than that set forth in the presentence report based on its argument that there is an additional victim entitled to restitution. In her sentencing memorandum, Defendant disagreed with

---

[1] The Court sentenced Defendant to 37 months as to each of Counts One through Three, to be served concurrently, and 24 months as to each of Counts Four and Five, concurrent with each other but consecutive to Counts One through Three. With respect to supervised release, the Court ordered Defendant placed on a supervised release term of two years as to each of Counts One through Three and one year as to each of Counts Four and Five, all to be served concurrently.

the Government's position (ECF No. 50). The court heard oral argument at sentencing and deferred the matter of restitution to permit the parties an opportunity to file additional briefing on the matter (*see* Order, ECF No. 55). The Government filed another sentencing memorandum regarding restitution (ECF No. 58). Defendant did not.

The source of the instant disagreement stems from events that occurred prior to Defendant becoming employed at a bank. From 2006 to 2017, Defendant worked at Ellis Capital Management (ECM), a privately held wealth management company owned by David Ellis. ECM managed the financial affairs of several clients, which included acting as the trustee for approximately 200 trust accounts. Evidence presented at trial established that Defendant fraudulently obtained funds from ECM and various clients' trust accounts from 2007 to 2017. In 2017, ECM was acquired by West Shore Bank, a financial institution insured by the Federal Deposit Insurance Corporation (FDIC). Defendant worked in the trust department of West Short Bank and continued to wrongfully divert funds to her own use until she retired in December of 2019. Her fraudulent conduct was discovered by the bank within weeks of her retirement, leading to audits and the criminal charges in this case.

The Government argues that Ellis is entitled to approximately $575,000[2] in restitution for the money Defendant fraudulently diverted from ECM before it was acquired by West Shore Bank, at which time he and Defendant were hired on and served the same trust clients. The Government contends that because Defendant engaged in a scheme to defraud starting in 2007 and continuing through 2019, Ellis is properly considered a victim for purposes of restitution.

---

[2] The Government identifies the loss as $575,132.91 in its initial sentencing memorandum (ECF No. 48), and as $579,322.51 in its supplemental memorandum (ECF No. 49).

It is the Court's chief priority to award restitution to the full extent required by and allowable under the law. With that principle in mind, the Court must determine whether the restitution statute applies to the money Defendant purloined from Ellis while at ECM.

18 U.S.C. §366A(a)(1) provides that "the court shall order … that the defendant make restitution to the victim of the offense." The statute defines "victim" as "a person directly and proximately harmed as a result of the commission of an offense … including, in the case of an offense that involves as an element a scheme … any person directly harmed by the defendant's criminal conduct in the course of the scheme …." § 366A(a)(2). To apply the statute, the Court will determine whether there is "an offense that involves as an element a scheme" and will then determine whether Ellis was directly harmed by Defendant's "criminal conduct in the course of the scheme."

Defendant was convicted of bank fraud under 18 U.S.C. § 1344(1). This statute sets forth criminal penalties for "[w]hoever knowingly executes, or attempts to execute, a scheme … to defraud a financial institution…." 18 U.S.C. § 1344(1). Thus Defendant was convicted of "an offense that involves as an element a scheme." A "financial institution" is defined in relevant part under 18 U.S.C. § 20 as "an insured depository institution (as defined in section 3(c)(2) of the Federal Deposit Insurance Act). Evidence was presented at trial to establish that West Shore Bank is FDIC insured, and thus, it constitutes a financial institution for purposes of bank fraud. Thus, the only remaining question is whether Ellis was directly harmed by Defendant's criminal conduct in the course of the scheme.

The Government reasons that "because the crime was a scheme" and Ellis "was directly harmed by it, [] that is all the law requires" (ECF No. 58. at PageID.364 (citing 18 U.S.C. § 3663A(a)(2)).

3

However, Ellis was not harmed by Defendant's "criminal conduct in the course of the scheme." For the purposes of § 366A(a)(2), federal bank fraud is the referential "offense that involves as an element a scheme." Defendant's conduct was not legally cognizable as federal bank fraud until FDIC insured West Shore Bank acquired ECM. While Defendant's conduct from 2007 until 2017 was part of the same scheme as her conduct from 2017 until 2019 in the *colloquial* sense of the word "scheme," her conduct could not have been part of a scheme as that term is used in § 1344 and thus was not part of Defendant's scheme as that term is used in § 366A(a)(2). During her tenure at ECM, Defendant had not yet worked at a bank; and thus, she could not have been scheming to defraud a bank at the time she harmed Ellis by embezzling from ECM. While the Court is empathic to Ellis' financial plight at the hands of Defendant prior to 2017, it must conclude that § 366A does not permit the Court to order restitution for those losses.

The Government has not provided any case where a court ordered restitution to victims harmed by conduct that constituted a distinct "scheme" from the "scheme" referenced as an element of the crime for which the defendant was convicted. Here, unlike in *U.S. v. Jones*, the Government does not ask that restitution be paid to a victim who was harmed by conduct for which the defendant was indicted but acquitted. *Cf.* 641 F.3d 706, 713 (6th Cir. 2011). Moreover, the Government does not ask *only* that restitution be paid to a victim who was harmed by conduct for which the defendant was not indicted. *Cf. U.S. v. Carpenter*, 359 F.App'x 553, 559 (6th Cir. 2009) (affirming award of restitution for checks mailed to companies that were part of Defendant's Ponzi scheme); *U.S. v. Kilpatrick*, 749 F.App'x 442, 445 (6th Cir. 2018) (affirming award of restitution for Defendant's rigging of a city's water-main contract bidding process, which was part of Defendant's pattern of racketeering but not an element of the RICO case brought against him);

4

*U.S. v. Coffee*, 110 F.App'x 654, 656 (6th Cir. 2004) (affirming award of restitution for harm caused when Defendant, in connection with a conspiracy to commit wire and mail fraud, overdrew a bank account). Here, the Government asks that restitution be paid to a victim who was harmed by conduct for which the defendant was not indicted *and* which could not have constituted part of the crime for which the defendant *was* indicted. Because Defendant did not work for an FDIC insured institution from 2007 to 2017, her conduct was not proscribed as federal bank fraud, the offense for which she was indicted and convicted. *See U.S. v. Kones*, 77 F.3d 66, 71 (3d Cir. 1996) (declining to order restitution when the conduct that harmed the victim was "not conduct proscribed by the mail fraud statute" under which the defendant was convicted). The Government's cases, therefore, are inapposite. Though Sixth Circuit precedent supports restitution for certain victims who were not harmed by indicted conduct, this "precedent applies only when the loss is attributable to the precise scheme that was an element of the defendant's convicted offense." *Jones*, 641 F.3d at 714. Ellis was not harmed by the precise scheme that was an element of the defendant's convicted offense, being a scheme to defraud a bank. Accordingly, unlike West Shore Bank, Ellis is not a "victim" under § 366A(a)(2).

    **IT IS HEREBY ORDERED** that Defendant make restitution in the amount of $206,662.61 to payee Chubb Insurance.

    **IT IS FURTHER ORDERED** that the interest requirement is waived for the restitution.

    An Amended Judgment consistent with this Memorandum Opinion and Order will issue.

Dated: October 1, 2024

      /s/ Jane M. Beckering
      JANE M. BECKERING
      United States District Judge